## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
APRIL BEUTEL                 :    Civ. No. 3:17CV01193(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :    July 2, 2018
ACTING COMMISSIONER, SOCIAL  :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff April Beutel ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner or in the alternative to remand for a rehearing. [Doc. #18]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #20].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alterative Motion for Remand for a Rehearing **[Doc. #18]** is **GRANTED, in part,** to the extent plaintiff seeks a remand for a

rehearing, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **DENIED**.

## I.    PROCEDURAL HISTORY[1]

Plaintiff filed an application for SSI on December 10, 2013, alleging disability beginning December 3, 2013. See Certified Transcript of the Administrative Record, Doc. #16, compiled on September 7, 2017, (hereinafter "Tr.") at 209-17. Plaintiff's application was denied initially on January 27, 2014, see Tr. 152-60, and upon reconsideration on March 12, 2014. See Tr. 161-63.

On September 23, 2015, plaintiff, represented by Attorney Maurice Maitland, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Deirdre R. Horton. See Tr. 94-125. On March 1, 2016, the ALJ issued an unfavorable decision. See Tr. 59-78. On May 23, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 1, 2016, decision the final decision of the Commissioner. See Tr. 1-7. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, now represented by Attorney Olia Yelner, timely filed this action for review and now moves to reverse the

---

[1] Plaintiff filed a joint medical chronology on behalf of both parties. See Doc. #18-2.

Commissioner's decision, or alternatively, to remand for a rehearing. [Doc. #18]. On appeal, plaintiff argues:

1. The ALJ failed to properly weigh the opinion evidence;

2. The ALJ failed to properly develop the record;

3. The ALJ failed to properly assess plaintiff's Residual Functional Capacity ("RFC"); and

4. The ALJ's step five determination is not supported by substantial evidence.

See generally Doc. #18-1 at 18-35.

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See

Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d

137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

# III. **SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).[2]

---

[2] Some of the Regulations cited in this decision were amended, effective March 27, 2017. Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim);

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 74. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of December 10, 2013. See Tr. 64. At step two, the ALJ found that plaintiff had the severe impairments of "an anxiety disorder and borderline intellectual functioning." Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 65. The ALJ specifically considered Listing 12.06 (anxiety-related disorders) in making that determination. See id. Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple routine tasks; she can relate appropriately with others, but should work on tasks alone, rather than in groups or teams. She should have no interaction with the general public and should work in an environment that is predictable, with minimal changes in routine.

Tr. 66. At step four, the ALJ concluded that plaintiff had no past relevant work. See Tr. 73. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as a Vocational Expert's ("VE") answer to an

interrogatory, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 73-74.

## V.   DISCUSSION

Plaintiff raises several arguments in support of reversal or remand. As set forth below, the ALJ's decision suffers from a number of infirmities, each of which contributes to the conclusion that plaintiff did not receive the benefit of a full and fair hearing on her claim. For that reason, as explained further below, the Court remands this matter for further administrative proceedings.

### A.   Development of the Record by the ALJ

Plaintiff contends that the ALJ failed to develop the record because she did not obtain the records from plaintiff's therapist, Nancy Rhoda. See Doc. #18-1 at 23-24, 29-30.[3] Plaintiff asserts that those records are significant because the ALJ determined that Ms. Rhoda's opinion "cannot be given

---

[3] Plaintiff also contends that the ALJ failed to develop the record because she did not obtain the testimony of a VE, but instead relied on a VE's answer to an interrogatory. See Doc. #18-1 at 30-32. The Court construes this as an argument that the ALJ's step five determination is not supported by substantial evidence. Because the Court finds other error, it need not reach that specific issue. However, on remand, the ALJ should consider obtaining the testimony of a VE in light of plaintiff's well-documented mental impairments.

controlling weight as there are absolutely no treatment records from her or any facility called Creative Healing Services." Id. at 29 (citing Tr. 71). Plaintiff contends that her "hearing attorney" submitted records from Creative Healing Services to the ALJ on February 25, 2016, after requesting an extension of time until March 10, 2016, to do so. See Doc. #18-1 at 23; see also Tr. 57, 317, 324. The next day, on February 26, 2016, ALJ Horton wrote a letter to plaintiff's hearing attorney stating that the attorney "submitted additional evidence after the issuance of the hearing decision on February 25, 2016. The record is closed, but you may request review by the Appeals Council." Tr. 57. Plaintiff emphasizes that the ALJ's decision is dated March 1, 2016, not February 25, 2016, as asserted in ALJ Horton's letter. See Doc. #18-1 at 23; see also Tr. 59.

Defendant responds that "much of Plaintiff's argument appears to be based on the mistaken notion that the ALJ discounted Ms. Rhoda's opinions due to the absence of treatment notes. ... Although the ALJ commented on the absence of the treatment notes, the ALJ ultimately assigned some weight to Ms. Rhoda's opinions and arrived at an RFC finding that was generally consistent with those opinions." Doc. #20-1 at 17. Defendant further contends that there were no obvious gaps in

the record, and that the available evidence was adequate to make a disability determination. See id. at 18.

### 1. *Applicable Law*

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and internal quotation marks omitted).

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." Parker v. Colvin, No. 3:13CV1398(CSH)(JGM), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (quotation marks omitted); see also Santiago v. Astrue, No. 3:10CV937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) ("The plaintiff in the civil action must show

that he was harmed by the alleged inadequacy of the record[.]"
(citation omitted)).

## 2. *Creative Healing Services Records*

In considering the September 2015 opinions of Ms. Rhoda,
the ALJ stated:

> Ms. Rhoda's various opinions are given due consideration
> but cannot be given controlling weight as there are
> absolutely no treatment records from her or any facility
> called Creative Healing Services. Nonetheless, it is
> noted for the record that the residual functional
> capacity given above is more – rather than less –
> consistent with her overall opinion. Accordingly, Ms.
> Rhoda's various opinions are given some weight to the
> extent that they are consistent with residual functional
> capacity stated above.

Tr. 71. Similarly, as to an undated letter authored by another
one of plaintiff's therapists, Elaine Gallas, MA, the ALJ
stated:

> Also contained in the record is an undated letter from
> a Ms. Elaine Gallas, MA, mental health clinician at
> Creative Healing Services (Exhibit B14F, page 4). Ms.
> Gallas informed that the claimant suffers from fatigue
> as a symptom of her "diagnoses" and side effect of her
> medications, which interferes with her ability to work
> at this time (Exhibit B14F, page 4). As noted above,
> there is no evidence of any treatment from any provider
> at Creative Healing Services. Further, there is no
> evidence that the claimant suffers from any fatigue of
> note as a side effect of any of her medications. It is
> noted that Ms. Gallas cannot prescribe medication and
> does not even identify the diagnoses or medications that
> purportedly make the claimant fatigued. It appears that
> Ms. Gallas wrote this letter in manner of a sympathetic
> advocate rather than an objective treating sources.
> Accordingly, it is given no weight.

Tr. 71. The ALJ thus discounted the statements of not just one, but two, of plaintiff's treating mental health sources on the ground that there were no supporting treatment notes from Creative Healing Services. Here, the failure to obtain and consider the records from Creative Healing Services was error, particularly because "the Second Circuit has emphasized the extra care necessary when adjudicating claims of a litigant whose mental capacity is in question, as in this case." Parker, 2015 WL 928299, at *12 (citation and internal quotation marks omitted).

Despite several references to treatment at Creative Healing Services, the record before the ALJ did not include any actual treatment records from Creative Healing Services. See, e.g., Tr. 405 (August 27, 2012, letter from Ms. Rhoda: "April Beutel is currently receiving Art Therapy Services and Counseling services on a weekly basis from Creative Healing Services, LLC."); Tr. 325 (November 4, 2013, letter from Ms. Rhoda: "April Beutel is currently receiving Art Therapy Services and Counseling services on a weekly basis from Creative Healing Services, LLC."); Tr. 241 (Disability Report indicating plaintiff first engaged in therapy with Ms. Rhoda in August 2012 to treat plaintiff's "mental illness"); Tr. 360 (Disability Report stating plaintiff first saw Ms. Rhoda on July 12, 2012, for "counseling and

therapy"). Despite this ample notice, there was no apparent effort by the ALJ to independently obtain the records from that mental health treatment provider.[4]

"The ALJ's duty to develop the record is especially important in cases involving mental impairment." Parker, 2015 WL 928299, at *12 (citation and internal quotation marks omitted). Here, plaintiff suffers from the severe mental impairments of anxiety disorder and borderline intellectual functioning. See Tr. 64. Records also suggest that plaintiff suffers from obsessive compulsive disorder, although the ALJ did not find that to be a severe impairment. See, e.g., Tr. 85 (Letter dated February 19, 2016, from Ms. Gallas: "Please note the additional diagnosis of Obsessive Compulsive Disorder since my last letter, dated November 25, 2015."). Although defendant argues that the missing treatment records are not significant because they would not change the ALJ's decision, the Court is not persuaded; "[t]he duty to develop the record goes hand in hand with the treating physician rule, which requires the ALJ to give special deference to the opinion of a claimant's treating physician."

---

[4] Although the ALJ did not affirmatively seek out the records of Ms. Rhoda, some effort was made by the Agency to obtain the records of Ms. Rhoda prior to the administrative hearing stage of proceedings. See Tr. 129.

Batista v. Barnhart, 326 F. Supp. 2d 345, 353–54 (E.D.N.Y. 2004)
(citation omitted).

Ms. Rhoda and Ms. Gallas are not "acceptable medical
sources" and therefore, their opinions are not entitled to
controlling weight. See 20 C.F.R. §416.927(c)(2), §§416.913(a),
(d)(1)-(4). Nevertheless, when weighing any medical opinion, the
Regulations require that the ALJ consider, inter alia, the
relevant evidence used to support the opinion and the
consistency of the opinion with the entire record. See 20 C.F.R.
§§416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996
WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL
2329939, at *3-4. Accordingly, the absence of a medical source's
records is significant when considering the weight to ascribe to
that source's opinion.[5]

As to the undated letter authored by Ms. Gallas, which
stated that plaintiff suffers from "significant feelings of
fatigue", the ALJ afforded that letter no weight largely because
there "is no evidence of any treatment from any provider at

---

[5] The Court further notes that the law of this Circuit suggests
that even more deference should be afforded to the opinion of a
treating mental health source, such as Ms. Rhoda or Ms. Gallas.
See, e.g., Carton v. Colvin, No. 3:13CV379(CSH), 2014 WL 108597,
at *15 (D. Conn. Jan. 9, 2014); Rodriguez v. Astrue, No.
07CV534(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9,
2009).

Creative Healing Services" and because "there is no evidence that the claimant suffers from any fatigue of note as a side effect of any of her medications." Tr. 71. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citation omitted). Here, however, records may exist that would alter the decision of the Commissioner. Indeed, had the ALJ obtained the records from Creative Healing Services, or requested clarification of the conclusion set forth in the letter authored by Ms. Gallas, the ALJ might well have afforded more weight to that letter. Records reflecting plaintiff's significant fatigue, to which plaintiff also testified during the administrative hearing, see Tr. 117, might likewise have influenced the ALJ's RFC finding and resulting hypothetical interrogatory presented to the VE. See Tr. 304-09. Those records might also have persuaded the ALJ to find plaintiff's allegations regarding her fatigue more credible, which could have impacted the ALJ's RFC determination. See Tr. 72-73. Records submitted to the Appeals Council which relate to the relevant time period confirm that the missing records could be significant on the issue of plaintiff's fatigue. See Tr. 14 (Mental Residual Functional Capacity Questionnaire completed by Ms. Gallas describing "the side effects of medications that may

have implications for working[:] Drowsiness, fatigue and lethargy. Client reports these symptoms persist most of the day nearly every day. Exacerbates difficulty with concentration and memory").

Similarly, the record before the ALJ did not contain a single treatment record from Ms. Rhoda, although it did include two of her medical source statements. See Tr. 431, 435.[6] Defendant contends that the lack of treatment records is of no import because the RFC determination is largely consistent with Ms. Rhoda's opinions. See Doc. #20-1 at 17. The Court finds that the absence of Ms. Rhoda's treatment records is significant, because those records may shed light on plaintiff's anxiety and functional limitations in a way which the records before the ALJ did not. That is particularly true where, as here, there is scant substantive evidence (just three progress notes) from plaintiff's treating mental health providers for the time period of December 10, 2013, (the application date) to July 2014. See, e.g., Tr. 369, 370, 371. There is also no evidence of record from plaintiff's treating mental health providers from approximately August 2015 through the date of the ALJ's

---

[6] A third opinion authored by Ms. Rhoda is now included in the record. See Tr. 502-05. That opinion, however, was not before the ALJ. See Tr. 6.

decision, March 1, 2016. Thus, for the three year time period under consideration, there was approximately one year in which there are no treatment notes from plaintiff's mental health providers. Accordingly, defendant's position that there are no obvious gaps in the record is not accurate, and the ALJ thus was under a duty to further develop the administrative record.

### 3. *Opinion of Non-Examining Physician*

The missing records are also significant in light of the ALJ's assignment of significant weight to the opinion of the non-examining physician, whose opinion was based on a review of the medical record as it existed at the time of her opinion. <u>See</u> Tr. 72 (citing Exhibit B3A).[7] The opinion of the non-examining physician is dated March 10, 2014. <u>See</u> Tr. 134-35, 145-46. That opinion was rendered without the benefit of plaintiff's missing treatment records. It was also rendered without the benefit of Ms. Rhoda's September 2015 opinions. Because that opinion was not based on a full record, the ALJ should not have relied heavily on it. <u>See, e.g.</u>, <u>Jazina v. Berryhill</u>, No.

---

[7] Although there are two opinions from non-examining physicians included in the record, and the ALJ referred to the "DDS consultative professionals," Tr. 72, the ALJ in fact relied only on the opinion rendered by Dr. Swanson at the reconsideration level of review. At the initial level of review, an opinion as to plaintiff's mental RFC was also provided by Dr. Hill, dated January 24, 2014. <u>See</u> Tr. 133-135. The ALJ did not reference Dr. Hill's opinion in his decision.

3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017) ("The ALJ erred in assigning significant weight to the state agency medical consultants' under-informed opinions and in allowing their opinions to override those of plaintiff's treating physicians."); see also 20 C.F.R. §416.927(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.").

**B.** *Consideration of the Evidence by the Appeals Council*

Plaintiff also contends that the records from Creative Healing Services should have been considered at the Appeals Council level. See Doc. #18-1 at 23-37. Defendant responds that the Appeals Council properly considered the evidence before it. See generally Doc. #20-1 at 18-19.

The record reflects a Notice of Appeals Council Action dated May 23, 2017, which indicates that the Appeals Council denied plaintiff's request for review. See Tr. 1-7. The Notice specifically references the additional evidence that plaintiff contends the Appeals Council should have considered:

You submitted a correspondence dated February 8, 2016 from Marianne Vahey, M.D. (1 page); a BRS Individualized Community-Based Assessment report dated December 31, 2015 from Rose Givens (3 pages), a correspondence dated February 19, 2016 from Elaine Gallas MA (1 page), and records dated November 16, 2015 to February 29, 2016 from Creative Healing Services (12 pages). We find this evidence does not show a reasonable probability that it would change the outcome of this decision. <u>We did not consider and exhibit this evidence</u>.

You also submitted records dated March 7, 2016 to January 27, 2017 from Creative Healing Services (32 pages) and a Modified Mini Screen dated February 20, 2017 from April Beutel (3 pages). The Administrative Law Judge decided your case through March 1, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 1, 2016.

Tr. 2 (emphasis added).

20 C.F.R. §416.1470 describes the types of cases that the Appeals Council will review:

The Appeals Council will review a case if — ... Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. §416.1470(a)(5).[8] "Evidence is material if it is (i) relevant to the time period for which benefits have been denied

---

[8] Paragraph (b) requires that before the Appeals Council considers additional evidence, a claimant must "show good cause for not informing us about or submitting the evidence as described in §416.1435[.]" 20 C.F.R. §416.1470(b). On March 25, 2017, the Social Security Administration sent a letter to plaintiff stating: "Because your case was pending at the Appeals Council before our rule about when to give us evidence became

and (ii) probative, meaning it provides a reasonable probability
that the new evidence would have influenced the Commissioner to
decide the claimant's application differently." <u>McIntire v.
Astrue</u>, 809 F. Supp. 2d 13, 21 (D. Conn. 2010). "New evidence
submitted to the Appeals Council following the ALJ's decision
becomes part of the administrative record for judicial review
when the Appeals Council denies review of the ALJ's decision."
<u>Lesterhuis v. Colvin</u>, 805 F.3d 83, 87 (2d Cir. 2015) (quoting
<u>Perez</u>, 77 F.3d at 45).

    The Appeals Council erred in its treatment of the records
which it found to post-date the ALJ's decision. Although the
Appeals Council is correct that the relevant time period ended
at the time of the ALJ's decision of March 1, 2016,[9] it failed to
consider that some of the records dated after the ALJ's decision
are retrospective in nature. A Mental Residual Functional
Capacity Questionnaire dated January 27, 2017, authored by Ms.
Gallas with Creative Healing Services, states that "the <u>earliest</u>

_____

effective, we will find that you showed good cause for not
submitting additional evidence earlier. ... We will make this
good cause finding for additional evidence that you have already
submitted and for additional evidence that you submit before we
issue our action in your case." Tr. 10.

[9] To be entitled to an award of SSI benefits, a claimant must
demonstrate that he or she became disabled at any time <u>before</u>
the ALJ's decision. <u>See</u> <u>Frye ex rel. A.O. v. Astrue</u>, 485 F.
App'x 484, 486 (2d Cir. 2012); 20 C.F.R. §§416.202, 416.203.

date the description of symptoms and limitations in this form applies" is 1999-2000. Tr. 18 (emphasis in original); see also Tr. 14 ("Assessment is from November, 2015 to Present." (sic)). Similarly, a letter authored by Ms. Gallas dated January 23, 2017, states: "Ms. Beutel's diagnoses are serious and persistent with poor prognosis and have existed over two years (onset approximately 1999-2000)." Tr. 19. That letter then goes on to detail plaintiff's functional limitations. See id.

"The Appeals Council rejected the newly submitted evidence because it is about a later time, but medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." McCarthy v. Colvin, No. 3:16CV1716(JGM), 2018 WL 495678, at *15 (D. Conn. Jan. 22, 2018) (citation and internal quotation marks omitted). Indeed, "a categorical refusal to consider new and material evidence solely because it was created after the date of the administrative law judge's decision can constitute reversible error." Id. (citation omitted).

Here, the new evidence is material. Specifically, the opinion of Ms. Gallas supports a finding of greater functional limitations during the relevant time period than those found by the ALJ. That opinion, plus any additional treatment records from Ms. Gallas and/or Ms. Rhoda, could certainly influence the

ALJ to decide the case differently, particularly where, as here, there are no treatment records from plaintiff's mental health providers from after August 2015. See Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (When the Appeals Council fails to consider new and material evidence that relates to the period on or before the date of the ALJ's hearing decision, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence."). Additionally, "the Appeals Council's cursory, formulaic rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning, is insufficient." McCarthy, 2018 WL 495678, at *15 (citation omitted). Accordingly, remand is appropriate in light of the Appeal's Council's failure to consider the new evidence from Ms. Gallas.

### C.    Full and Fair Hearing

Generally, each of the above-identified errors supports the conclusion that plaintiff did not have the benefit of a fair review of her claim.

> Within the penumbra of a court's narrow authority to review decisions of the Commissioner lies a threshold duty to determine whether administrative proceedings were conducted in accordance with the beneficent purposes of the Social Security Act. Thus, before district courts evaluate specific findings and conclusions, they first ensure that claimants received full and fair hearings. See Echevarria v.

> Secretary of Health & Human Servs., 685 F.2d 751, 755
> (2d Cir. 1982); accord Cruz v. Sullivan, 912 F.2d 8, 11
> (2d Cir. 1990). This involves making a "searching
> investigation" of administrative records to ensure that
> administrative law judges protected claimants'
> rights. See Robinson v. Secretary of Health & Human
> Servs., 733 F.2d 255, 258 (2d Cir. 1984).

Kinslow v. Colvin, No. 5:12CV1541(GLS)(ESH), 2014 WL 788793, at

*3-4 (N.D.N.Y. Feb. 25, 2014). "It is the Commissioner's

affirmative responsibility to develop the record in such a way

as to ensure a full and fair hearing." Cruz v. Barnhart, 343 F.

Supp. 2d 218, 220 (S.D.N.Y. 2004). That responsibility includes

the duty to "make every reasonable effort to help [the claimant]

get medical reports from [his or her] own medical sources[.]"

Perez, 77 F.3d at 47 (citation omitted). Here, the record does

not indicate that the ALJ undertook "every reasonable effort" to

develop the record such that all of plaintiff's relevant medical

records were included. Id. The Appeals Council also failed to

consider all of the relevant evidence before it. Accordingly,

plaintiff's claim for benefits was denied without the ALJ, or

the Appeals Council, having reviewed all of plaintiff's relevant

medical evidence. The Court is thus unable to find that

plaintiff had a "full and fair hearing" on her claim.

When a record is incomplete, a decision based thereon is

not supported by substantial evidence. See Pratts v. Chater, 94

F.3d 34, 38 (2d Cir. 1996). Therefore, the Court finds that

remand of this matter is warranted, and that plaintiff's claim should be re-evaluated after obtaining and considering all of the relevant evidence. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. On remand the Commissioner shall address the other claims of error not discussed herein.

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate for further development of the record, as discussed herein.

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alterative Motion for Remand for a Rehearing **[Doc. #18]** is **GRANTED**, **in part**, to the extent plaintiff seeks a remand for a rehearing, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 2nd day of July, 2018.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
